UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| JOHN ROSS WHITE, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 6:23-CV-110-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN GILLEY, Warden, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon the joint motion of the parties to stay this case, or alternatively to defer all approaching briefing deadlines, in light of petitioner John White's imminent release from custody. [R. 13]. For the reasons stated, the Court will deny the request and dismiss the petition for lack of jurisdiction as moot.

White filed his petition in June 2023, contending that the Bureau of Prisons ("BOP") had violated his procedural due process rights in May 2022 by revoking his home confinement without a hearing and then returning him to prison. *See* [R. 1, p. 19 ("Based on *Morrissey* and its progeny, Mr. White had a constitutionally protected liberty interest in remaining on home confinement because of the severity of the change between home and prison.")]. When he filed his petition, White was confined at the federal penitentiary in Pine Knot, Kentucky, and the BOP projected that he would be released from custody in November 2024. *See id.* at 4.

Both of those critical facts have recently changed, but the parties' joint motion to stay is focused upon only the latter. Warden John Gilley noted in his response to the petition that White "is currently projected to release from federal custody on November 21, 2023, via First Step Act (FSA) release[.]" [R. 12, p. 1 n.1]. The BOP's application of credits available under the First

Step Act, *see* 18 U.S.C. § 3624(b), advanced White's projected release date by a full year. Given his approaching release date, "on September 6, 2023, Mr. White was released to the Nashville, Tennessee Residential Reentry Center ("RRC")[.]" [R. 13, p. 2]. The BOP's online Inmate Locator database confirms White's transfer to the Nashville RRM.[1] *See* https://www.bop.gov/inmateloc/ (accessed September 13, 2023). The parties correctly note that under the current scheduling order, *see* [R. 11], the parties will complete briefing only shortly before White is expected to be released from custody, an event that will render his petition moot. Avoiding unnecessary briefing and judicial effort in light of that anticipated mootness grounds their stay request. [R. 13, pp. 2-5].

Article III, Section 2, Clause 1 of the United States Constitution limits the judicial power to "cases" and "controversies." *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990). The doctrine of mootness traditionally derives from this requirement. *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974). In this case, White remains, at least for now, in federal custody (albeit in a less restrictive form than prison), so his case is not yet moot in the constitutional sense. Still,

> Mootness has many moods. Always the doctrine describes a situation where events in the world have so overtaken a lawsuit that deciding it involves more energy than effect, a waste of effort on questions now more pedantic than practical. In some cases mootness bears a constitutional countenance, acting as a jurisdictional bar against even entertaining a case. Other times mootness carries a more prudential complexion, permitting us to withhold relief we have the authority to grant.

*Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1209 (10th Cir. 2012) (Gorsuch, J.). In appropriate cases, the Sixth Circuit recognizes prudential mootness as grounds for a court to stay its hand. *Cf. Greenbaum v. EPA*, 370 F.3d 527, 534-35 (6th Cir. 2004). Barring unforeseen

---

[1] Nashville's RRM is actually an administrative facility with oversight responsibilities over numerous RRCs (commonly known as "halfway houses") in the surrounding area, which are generally operated by private companies and foundations under contract with the BOP. *See* https://www.bop.gov/about/facilities/offices.jsp#rrm (accessed September 13, 2023).

circumstances, White will soon be home for the holidays, leaving any discontent about his return to prison last year (and the Court's present ability to rectify any procedural error in effecting it) behind. That White's petition will soon present only academic questions rather than real ones militates in favor of granting the stay on prudential mootness grounds.

But as noted above, the BOP recently transferred White out of this District to a halfway house in or near Nashville, Tennessee. That fact counsels in favor of dismissing the petition outright: the transfer prevents this Court from granting habeas relief because the case is moot right now, not merely at risk of becoming so at some point in the future.

A habeas corpus petition challenging the fact of present detention must be filed in the district of incarceration. *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004). This is because "a habeas petition is necessarily directed towards a particular respondent precisely because that is the individual or entity that has the legal authority to effectuate relief should the habeas court find it warranted." *Boone v. Quintana*, No. 5:14-CV-84-DCR, 2016 WL 3566216, at *6 (E.D. Ky. June 27, 2016) (*citing Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 494-95 (1973)).

It has often been incanted that a subsequent transfer of the petitioner does not defeat the habeas court's jurisdiction. *Cf. White v. Lamanna,* 42 F. App'x 670, 671 (6th Cir. 2002) ("A district court's jurisdiction generally is not defeated when a prisoner who has filed a § 2241 petition while present in the district is involuntarily removed from the district while the case is pending."). But the word "generally" in *White* embodies a critical qualification on this principle. The source of the rule, whether considered a matter of venue or jurisdiction, derives from a case decided by the Supreme Court nearly eighty years ago:

> Second. The question remains whether the District Court has jurisdiction to grant the writ of habeas corpus because of the fact that while the case was pending in the Circuit Court of Appeals appellant was moved from the Tule Lake Relocation

> Center in the Northern District of California where she was originally detained to the Central Utah Relocation Center in a different district and circuit.
>
> That question is not colored by any purpose to effectuate a removal in evasion of the habeas corpus proceedings. It appears that appellant's removal to Utah was part of a general segregation program involving many of these people and was in no way related to this pending case. Moreover, there is no suggestion that there is no one within the jurisdiction of the District Court who is responsible for the detention of appellant and who would be an appropriate respondent. We are indeed advised by the Acting Secretary of the Interior that if the writ issues and is directed to the Secretary of the Interior or any official of the War Relocation Authority (including an assistant director whose office is at San Francisco, which is in the jurisdiction of the District Court), the corpus of appellant will be produced and the court's order complied with in all respects. Thus it would seem that the case is not moot.
>
> In *United States ex rel. Innes v. Crystal*, 319 U.S. 755 [(1943)], the relator challenged a judgment of court martial by habeas corpus. The District Court denied his petition and the Circuit Court of Appeals affirmed that order. After that decision and before his petition for *certiorari* was filed here, he was removed from the custody of the Army to a federal penitentiary in a different district and circuit. The sole respondent was the commanding officer. Only an order directed to the warden of the penitentiary could effectuate his discharge and the warden as well as the prisoner was outside the territorial jurisdiction of the District Court. We therefore held the cause moot. There is no comparable situation here.
>
> ** ** **
>
> We only hold that the District Court acquired jurisdiction in this case and that the removal of Mitsuye Endo did not cause it to lose jurisdiction where a person in whose custody she is remains within the district.

*Ex parte Endo*, 323 U.S. 283, 304-06 (1944). *Endo* therefore establishes that the habeas court's ability to retain jurisdiction over a petition after the prisoner is transferred hinges upon the continued within-district presence of an official who could grant habeas relief if ordered by the habeas court:

> … the Court's holding that the writ could be directed to a supervisory official came not in our holding that the District Court initially acquired jurisdiction - it did so because Endo properly named her immediate custodian and filed in the district of confinement - but in our holding that the District Court could effectively grant habeas relief despite the Government-procured absence of petitioner from the Northern District. Thus, *Endo* stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition

- 4 -

>   naming her immediate custodian, the District Court retains jurisdiction and may
>   direct the writ to any respondent within its jurisdiction who has legal authority to
>   effectuate the prisoner's release.

*Padilla*, 542 U.S. at 440-41.[2] True, the BOP maintains facilities in several states where present therein are supervisory officials who have the legal authority to grant the kind of relief requested here, but Kentucky is not one of them.

White's transfer to Tennessee therefore moots the petition and deprives the Court of jurisdiction to grant relief.  For a thorough discussion, *see Gonzalez v. Grondolsky*, 152 F. Supp. 3d 39, 43-47 (D. Mass. 2016).  *See also Copley v. Keohane*, 150 F.3d 827, 829-30 (8th Cir. 1998) (dismissing appeal as moot in light of petitioner's post-filing transfer from federal prison in Missouri to supervision of probation office in Louisiana because "at this time Copley is not in the custody of anyone over whom we have jurisdiction, so there is no entity that we can order to effect Copley's release should the writ issue").  Courts throughout the country have consistently applied this approach.  *See Boone*, 2016 WL 3566216, at *5-7; *Levon v. Eichenlaub*, No. 07-13771, 2008 WL 5422682, at *2 (E.D. Mich. Dec. 29, 2008) ("Ordinarily, if a district court has proper jurisdiction when a habeas petition is filed, a subsequent transfer of the prisoner will not defeat habeas jurisdiction.  This remains true, however, only so long as an appropriate respondent with custody remains in the district.") (cleaned up); *Mendez v. Martin*, No. CV 15-

---

[2] A district court can act "within its respective jurisdiction" within the meaning of § 2241 by reaching the custodian through service of process. *See Rasul v. Bush*, 542 U.S. 466, 478-79 (2004). But a court cannot, consistent with the requirements of due process, serve an out-of-state defendant with no connection whatsoever to the forum state. *Cf. Thomas v. Ashcroft*, 470 F.3d 491 (2d Cir. 2006); *Scinto v. Fed. Bureau of Prisons*, 608 F. Supp. 2d 4, 8 (D.D.C. 2009).  In any event, a party must also be amenable to service of process under the forum state's long-arm statute.  *Cmty. Tr. Bancorp, Inc. v. Cmty. Tr. Fin. Corp.*, 692 F.3d 469, 471 (6th Cir. 2012).  Kentucky's long-arm statute is not co-extensive with the limits of federal due process, so the basis for the claims must fit within one of the enumerated categories found in Ky. Rev. Stat. § 454.210(2)(a).  *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011).  It is apparent that neither of these hurdles can be cleared in this case.

408ML, 2016 WL 2849598, at *4-5 (D.R.I. Apr. 19, 2016), *report and recommendation adopted*, No. CV 15-408 ML, 2016 WL 2732182 (D.R.I. May 10, 2016) (dismissing petition following petitioner's post-filing transfer out of state and noting that "[i]f there is an alternative respondent within the district who has the legal authority to produce the body, the case is not moot. There is no suggestion that this exception applies here."); *Roberts v. Cox*, No. 4:20-CV-04187-KES, 2023 WL 4669416, at *2 (D.S.D. Jan. 20, 2023) (noting lack of jurisdiction over petition because "[w]hile Roberts may be in custody, he is not in custody within the District of South Dakota, and there is no respondent with custody over him in South Dakota"); *Finley v. Cross*, No. 3:11-CV-01069-DRH, 2013 WL 321879, at *2 (S.D. Ill. Jan. 3, 2013), *report and recommendation adopted*, No. 11-CV-1069-DRH-PMF, 2013 WL 319338 (S.D. Ill. Jan. 28, 2013) (same); *Burress v. Weldon*, No. 4:21-CV-01551-CLM-NAD, 2023 WL 3013405, at *1 (N.D. Ala. Mar. 7, 2023), *report and recommendation adopted*, No. 4:21-CV-1551-CLM-NAD, 2023 WL 3012571 (N.D. Ala. Apr. 19, 2023) (same); *Jones v. Hendrix*, No. 2:20-CV-00247-ERE, 2021 WL 2402196, at *2 (E.D. Ark. June 11, 2021) (same); *Ybarra v. Kallis*, No. 21-CV-1396 (DSD/TNL), 2022 WL 14615503, at *2-3 (D. Minn. Sept. 28, 2022), *report and recommendation adopted*, No. 21-CV-1396 (DSD/TNL), 2022 WL 14615502 (D. Minn. Oct. 25, 2022) (same); *Parker v. Hazelwood*, No. 17-CV-484-LM, 2019 WL 4261832, at *4 (D.N.H. Sept. 9, 2019) (same).

The parties indicate that White will soon be released entirely from custody, and he is already beyond the Court's territorial jurisdiction. Because the Court can no longer grant the habeas relief White seeks, it will dismiss the petition for lack of jurisdiction.

Accordingly, the Court **ORDERS** as follows:

- 7 -

    1.    Petitioner John Ross White's petition for a writ of habeas corpus [R. 1] is **DISMISSED** for lack of jurisdiction.

    2.    The parties' Joint Motion to Stay Proceedings, or, Alternatively, to Continue the Remaining Briefing Deadlines **[R. 13]**, is **DENIED AS MOOT**.

    3.    This matter is **STRICKEN** from the docket.

This the 13th day of September, 2023.

*[Signature]*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY